UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY BOWLING,

      Plaintiff,

v.

      Case No. 2:22-cv-11897
      District Judge Denise Page Hood
      Magistrate Judge Kimberly G. Altman

WELLPATH INC., CORIZON
HEALTH INC., KIM FERRIS,
JULIANA MARTINO, JOHN DOE
#1, JOHN DOE #2, JOHN DOE #3,
and JOHN DOE #4,

      Defendants.

_____/

### REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT (ECF Nos. 20, 24)[1]

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. On August 15, 2022, plaintiff Terry Bowling (Bowling), proceeding *pro se*, filed a complaint against the above-captioned defendants. Broadly speaking, Bowling alleges that while confined at the Chippewa Correctional Facility (URF) and Macomb

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

Correctional Facility (MRF), defendants were deliberately indifferent to his serious medical needs by failing to timely diagnose his chronic lymphocytic leukemia (CLL),[2] and once he was diagnosed, failing to properly treat him. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 21).

Before the Court are two motions to dismiss, or in the alternative, for summary judgment on the basis of exhaustion. (ECF Nos. 20, 24). One motion was filed by Kim Farris, P.A. (Farris), Juliana Martino, N.P. (Martino), and Corizon Health, Inc. (Corizon),[3] regarding the events that allegedly occurred up to September 28, 2021. (ECF No. 24). On September 29, 2021, Wellpath, LLC (Wellpath) began providing medical services at MRF, and Farris and Martino became employed by Wellpath instead of Corizon. (*Id.*, PageID.137). The second motion, regarding allegations from September 29, 2021 onward, was filed by Farris, Martino, and Wellpath. (ECF No. 20). The motions are fully briefed, with

---

[2] "Chronic lymphocytic leukemia (CLL) is a type of cancer of the blood and bone marrow. . . . The term 'chronic' in chronic lymphocytic leukemia comes from the fact that this leukemia typically progresses more slowly than other types of leukemia. The term 'lymphocytic' in chronic lymphocytic leukemia comes from the cells affected by the disease — a group of white blood cells called lymphocytes, which help your body fight infection." https://www.mayo clinic.org/diseases-conditions/chronic-lymphocytic-leukemia/symptoms-causes/syc-20352428 (last accessed June 21, 2023).

[3] Defendants' names will be spelled as they appear in defendants' motions.

Bowling appearing to have responded to both in a single response, (ECF No. 34), and a reply from Corizon, Farris, and Martino, (ECF No. 35).  Wellpath did not file a separate reply.

For the reasons set forth below, it is RECOMMENDED that both motions be DENIED as to Farris and Martino, GRANTED as to Wellpath, and DENIED WITHOUT PREJUDICE as to Corizon, because proceedings are currently stayed against Corizon and any other relief would be inconsistent with the stay.

## II.     Background

### A.     Factual Allegations

The following facts are gleaned from the complaint, which are presumed true on a motion to dismiss.

While Bowling was incarcerated at URF and later at MRF, defendants failed to diagnose him with CLL in a timely manner and then chose to deny, delay, and refuse to provide him with proper treatment after he was diagnosed.  (ECF No. 1, PageID.1).  Because of defendants' deliberate indifference to his medical needs, Bowling's cancer continued to progress.  (*Id*.).  He now has Stage 4 cancer, which is terminal.  (*Id*.).

The issues surrounding Bowling's medical care stem from the actions of the

individual defendants (Farris, Martino, and John Does 1-4).[4] (*Id.*, PageID.2). The individual defendants' disregard of Bowling's serious medical needs was in line with the customs of Corizon, Wellpath, and MRF. (*Id.*). Ultimately, "[d]efendant's [sic] have, in [e]ffect, sentenced Bowling to death because of their systematic failure to provide adequate healthcare to prisoners." (*Id.*).

The URF defendants are John Doe 2, John Doe 3, and John Doe 4. (*Id.*, PageID.3). John Doe 2 was a physician assistant, John Doe 3 was a nurse practitioner, and John Doe 4 was a doctor. (*Id.*). The MRF defendants are Farris, Martino, and John Doe 1. (*Id.*, PageID.2-3). Farris was a physician assistant, Martino was a nurse practitioner, and John Doe 1 was a doctor. (*Id.*).

In August 2021, Bowling was informed by a nonparty, Dr. Akbar, that he might have CLL. (*Id.*, PageID.4). Dr. Akbar explained that he would receive updates from the lab and in-facility providers under the following circumstances: (1) when Bowling's white blood cell count was "abnormally high," and (2) when Bowling's white blood cell count was "critical." (*Id.*). However, nursing staff failed to inform Dr. Akbar when Bowling's white blood cell count was abnormally

---

[4] It is Bowling's obligation to identify the Doe defendants in a timely manner. If he cannot, the Doe defendants are subject to dismissal under Fed. R. Civ. P. 4(m) for failure to prosecute. *See Moore v. Maly*, No. 4:18-CV-13845, 2022 WL 2349723, at *1 (E.D. Mich. Apr. 26, 2022), *report and recommendation adopted sub nom. Moore v. Corizon Health Inc.*, 2022 WL 2345909 (E.D. Mich. June 29, 2022). If this Report and Recommendation is adopted, Bowling will have an opportunity to conduct discovery and determine the identities of John Does 1-4.

high and again when his white blood cell count was critical. (*Id.*).

In September 2021, an oncologist at Duane Waters Hospital in Jackson, Michigan, confirmed Bowling's CLL diagnosis. (*Id.*). The oncologist stated that Bowling would need to be seen every 90 days for follow-up appointments. (*Id.*).

Eventually, Bowling filed a grievance because he was being denied access to his own medical records. (*Id.*). Bowling was provided with five years of records, which showed that his white blood cell count first reached the abnormally high level on September 5, 2017. (*Id.* (citing ECF No. 1, PageID.17)). Bowling underwent frequent blood draws because of his Hepatitis C diagnosis, and the lab tested his white blood cell count as part of his routine workups. (ECF No. 1, PageID.4). Records reflect that Bowling's white blood cell count continued to exceed the normal range on dates including August 28, 2018, and September 4, 2019. (*Id.* (citing ECF No. 1, PageID.18-19).

Bowling asserts that defendants deliberately disregarded his serious medical needs during the four-year period between his initial abnormally high result and his CLL diagnosis. (ECF No. 1, PageID.4-5). If defendants had properly reviewed Bowling's white blood cell counts throughout those four years, then he could have been treated sooner and his life potentially saved. (*Id.*, PageID.5).

Additionally, as of the date of writing his complaint (dated August 9, 2022), Bowling had not been seen for a follow-up appointment with an oncologist at

Duane Waters Hospital nor had he been seen by John Doe 1.  (*Id*.).  His kites,[5]

grievances, and "desperate pleas to [Farris] and Martino to set up a treatment plan

or schedule him to see a doctor" have been unsuccessful.  (*Id*.).

B.     Procedural History Regarding Corizon

On February 17, 2023, Corizon filed a Suggestion of Bankruptcy and Notice

of Automatic Stay (Notice).  (ECF No. 28).  In the Notice, Corizon states that it

filed a voluntary bankruptcy petition under Chapter 11 of the United States

Bankruptcy Code in the United States Bankruptcy Court for the Southern District

of Texas (Case No. 23-90086 (CML)).  (ECF No. 31).  Under 11 U.S.C. §362 the

filing operates as an automatic stay as to the claims against it.  Thus, on March 6,

2023, the Court administratively stayed all proceedings as to Corizon during the

pendency of its bankruptcy proceedings.  (ECF No. 31).  Those proceedings are

ongoing.  Therefore, the undersigned recommends that Corizon's motion to

dismiss be denied without prejudice.

III.    Legal Standards

A.    Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure

---

[5] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

6

12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

### B.     Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").

"Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Bowling is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.   Discussion

### A.   Failure to State a Claim

#### 1.   Deliberate Indifference Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

9

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834). In *Farmer*, the Supreme Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." 511 U.S. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under "the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702 (citing *Farmer*, 511 U.S. at 834).

2.    Application

a.    Farris and Martino

Farris and Martino argue that Bowling has failed to make a clear showing that they were personally involved in his deprivation of rights, as required under *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976) and *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Bowling alleged that defendants, generally, "had a duty to understand and interpret lab results," "received routine lab results showing alarmingly high white blood cell counts," and "deliberately disregarded the significance of the threat those levels imposed on Bowling's health." (ECF No. 1,

10

PageID.4-5).  He also alleged that "[d]espite numerous kites requesting treatment .
. . and desperate pleas for [Farris] and Martino to set up a treatment [plan] or
schedule him to see the doctor," the disregard for his condition continued.  (*Id.*,
PageID.5).  Farris and Martino argue that these allegations are insufficient, as they
assume that " 'everyone was aware of everything,' " which is precisely the sort of
'unwarranted factual inferences' that the Court is not required to accept."  (ECF
No. 20, PageID.73-74; ECF No. 24, PageID.141).[6]

In his response, Bowling adds additional factual allegations regarding his
claims.  Of note, he states that Farris was his P.A. at the time of his September 4,
2019 blood test, which showed his white blood cell count to be 18.37 (and the
normal range to be 4.0-10.0).  (ECF No. 34, PageID.162, 165).  Farris and Martino
do not address the merits of these additional allegations, but merely contend that
the Court is limited to the pleadings when considering a motion to dismiss, citing
*Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

Reading Bowling's *pro se* complaint liberally and accepting his allegations
as true, the undersigned finds that he has gone beyond labels and conclusory
allegations and stated a valid claim against Farris and Martino.  He states that they

---

[6] Although the phrase "everyone was aware of everything" is included in
defendants' briefs in quotation marks, followed by a citation to *Grindstaff v.
Green*, 133 F.3d 416, 421 (6th Cir. 1998), this phrase could not be found in the
*Grindstaff* opinion.

11

received his blood work and disregarded the risks shown by it.  He also says that after his diagnosis, they ignored his numerous requests for cancer treatment. Although these allegations may ultimately prove to be untrue, Bowling is not required to prove his allegations at this time.  Rather, he must only plausibly allege liability under the Eighth Amendment deliberate indifference standard, which the undersigned finds Bowling has.  Therefore, it is recommended that Farris and Martino's motion to dismiss for failure to state a claim be denied.

Furthermore, to the extent that Bowling now has additional information to include in his complaint, the undersigned recommends granting Bowling leave to amend his complaint to include all facts outlining Farris and Martino's *personal involvement* in his deliberate indifference claim.  "[T]he rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (quoting *Garaux v. Pulley,* 739 F.2d 437, 439 (9th Cir. 1984)).  Because of the importance of addressing Bowling's claims on the merits, and because defendants did not highlight any reason that an amendment based on the allegations in Bowling's response would be futile, Bowling should be allowed to amend the complaint against Farris and Martino if he chooses.

              b.      Wellpath and Corizon

As to Bowling's claim against Wellpath, the undersigned agrees with defendants that he has not stated a claim.  It is well-established that liability under § 1983 must be based on more than merely the right to control employees.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-326 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-695 (1978).  To make out a claim under § 1983, Bowling's "allegations must demonstrate that each defendant [], through his or her own individual actions, *personally violated* [his] rights."  *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Iqbal*, 556 U.S. at 676).  "It is well-settled that [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).

When the acts of individual employees represent a municipal custom or policy, a municipal defendant can be held liable for the underlying acts.  *Id.* at 690-692.  Private defendants like Wellpath and Corizon can be held liable as well when they contract with the State to perform a traditional state function.  *Hamer v. Wellpath*, No. 2:22-CV-12500, 2022 WL 16744370, at *4 (E.D. Mich. Nov. 7, 2022).  Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an

official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

Here, Bowling alleges that defendants' acts were carried out "pursuant to customs specific to [Wellpath], [Corizon], and MRF." (ECF No. 1, PageID.2). This alone is insufficient to state a claim against Wellpath. Bowling has not alleged how his treatment was in fact customary to Wellpath, nor has he alleged an official policy, a ratification, or inadequate training or supervision. Thus, as to Wellpath, its motion to dismiss, (ECF No. 20), should be granted.

Corizon's motion to dismiss, (ECF No. 24), however, should be denied without prejudice, due to the bankruptcy stay, as explained above.

### B.    Failure to Exhaust Administrative Remedies

#### 1.    Exhaustion Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal

14

quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors."  *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory."  *Burton v.*

*Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles*

*by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint."  *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the

following information at Step I of the grievance process: "The issues should be

stated briefly but concisely.  Information provided is to be limited to the facts

involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates,

times, places, and names of all those involved in the issue being grieved are to be

included."  MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive 03.02.130 also sets forth time limits

regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within
> two business days of becoming aware of the issue, and then may file a
> Step I grievance about any unresolved issues with a grievance
> coordinator within five business days of the attempted informal

16

resolution.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted).  "Step III grievances are 'generally' responded to within sixty (60) days."  *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2.    Bowling's Grievances

Defendants[7] argue that Bowling did not exhaust any claims against them, as he did not name them at Step I of any grievance that was exhausted through Step III.  In support of this defense, they have attached a Step III Grievance Report to one of their motions, (ECF No. 20-2), which reflects two grievances filed by

---

[7] In light of the recommendation that Wellpath be dismissed on the merits and Corizon's motion to dismiss be denied without prejudice, the undersigned addresses exhaustion only as to Farris and Martino.

Bowling that were taken through Step III during the relevant period, identified as

MRF-22-08-1779-12Z1 (12Z1) and MRF-21-09-2072-28E (28E).

Bowling filed grievance 12Z1 about treatment for a scalp infection, which is

not relevant to his claims.  He filed 28E regarding his cancer treatment.  In that

grievance, Bowling stated that he'd had three recent blood draws, the last being on

August 26, 2021, and that the labs his blood work had been sent to had failed to

complete the tests on his blood.  (ECF No. 20-2, PageID.109).  He also stated that

he was not being seen, presumably about his white blood cell count and/or cancer

diagnosis, and wanted to be "told what is being done to fix this problem and what

is wrong with me."  (*Id*.).  He stated that in an attempt to resolve the issue prior to

grieving, he spoke with an unnamed nurse and was told that a meeting was

scheduled, but that no one had called him out to explain.  (*Id*.).

Defendants argue that "[t]his grievance has nothing to do with Defendants or

the allegations stated against them in the Complaint."  (ECF No. 24, PageID.144).

They also argue that the grievance was rejected for being untimely and vague,

which renders it unexhausted.  (*Id*.).

"[A] grievance denial on the merits constitutes exhaustion of the remedies

available, whereas a properly rejected grievance does not exhaust the claims

therein."  *Lewis v. Greason*, No. 2:21-CV-11939, 2023 WL 2949998, at *4 (E.D.

Mich. Feb. 15, 2023), *report and recommendation adopted,* 2023 WL 2572455

(E.D. Mich. Mar. 20, 2023). Setting aside whether this grievance related to at least some of Bowling's claims, which it arguably does, it was rejected for being untimely and vague. Bowling argued at Steps II and III that the grievance was not untimely because it was in regard to an ongoing health issue. (ECF No. 20-2, PageID.107). However, 28E was also explicitly rejected for vagueness, with a note stating "(No names)." (*Id.*, PageID.110). As noted above, grievances must include the "[d]ates, times, places and names of all those involved in the issue being grieved." *Reed-Bey*, 603 F.3d at 324 (quoting MDOC PD 03.02.130 ¶ T (now ¶ S)). By not identifying the individuals responsible for his lack of treatment, Bowling did not provide defendants with "a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. Thus, 28E does not exhaust Bowling's claims against Farris and Martino.

This, however, does not end the exhaustion analysis. Bowling has submitted with his complaint another grievance, filed on May 14, 2022, that he alleges exhausts his claims as well. That grievance, which does not have an identifier, stated that Farris and Martino had conscious disregard for Bowling's wellbeing based on their refusal to treat his cancer after failing to diagnose it. (ECF No. 1, PageID.10). It further stated that Farris and Martino failed to schedule Bowling to see the doctor or develop a treatment plan, despite numerous kites from Bowling. (*Id.*). Bowling also alleges, including attached exhibits, that he submitted a letter

19

requesting acknowledgement or receipt of this grievance, a letter requesting a Step II appeal form for the grievance, and a second request for an appeal form. (*Id*., PageID.3-4, 14-16).

Defendants argue that this grievance was never submitted and therefore does not exhaust Bowling's claims. They state that if it had been properly submitted, it would contain a unique identifying number, a date received, a response, and a signature from the reviewer. (ECF No. 20, PageID.77-78). However, this is scant evidence that Bowling did not in fact *attempt* to file the grievance, and Bowling's outlined attempts to obtain the status of his grievance indicate a reasonable likelihood that he did. "A prisoner need not exhaust remedies if they are not 'available.' " *Ross v. Blake*, 578 U.S. 632, 636 (2016). A grievance that is filed but never considered or responded to, despite numerous attempts, cannot be said to be available. Thus, there is a genuine issue of fact as to whether Bowling exhausted his claims by attempting to file a grievance to resolve his treatment issues. In other words, Farris and Martino have not met their burden to show that Bowling's claims against them were unexhausted as a matter of law.

Farris and Martino also argue that the attempted May 14, 2022 grievance does not exhaust Bowling's claims because nothing of note occurred on that date in

20

his complaint.[8]  However, as Bowling has alleged an ongoing lack of treatment for CLL, the date of the grievance is largely irrelevant.  They further argue that if Bowling's May 14, 2022 grievance had been submitted and considered, it would not have had a Step III response until "at least September 11, 2022[,]" rendering it unresolved by the date Bowling's complaint was filed.  (ECF No. 20, PageID.79). This argument ignores that MDOC Policy Directive 03.02.130 requires a Step III response "*within* 120 calendar days," (*id*. (emphasis added)), and also that there is no authority for applying this deadline where a grievance is never returned to the plaintiff or considered at any stage.

As explained above, there is an issue of fact regarding exhaustion, i.e., Farris and Martino have not carried their burden to show that Bowling's claims are unexhausted as a matter of law.  As such, the undersigned recommends their motions for summary judgment on the grounds of exhaustion be denied.

V.  Conclusion

For the reasons stated above, it is RECOMMENDED that defendants Farris, Martino and Wellpath's motion to dismiss and/or for summary judgment, (ECF No. 20), be DENIED as to Farris and Martino, and GRANTED as to Wellpath.  It is further RECOMMENDED that Corizon's motion to dismiss and/or for summary

---

[8] Defendants also note that this grievance post-dates Corizon's involvement in the allegations.  The undersigned is not considering the claims against Corizon in this Report and Recommendation, due to the Corizon stay.

judgment, (ECF No. 24), be DENIED WITHOUT PREJUDICE.

The undersigned further RECOMMENDS that Bowling be given a reasonable time to file an amended complaint to more fully set forth the facts regarding Farris and Martino's personal involvement.

If this recommendation is adopted, the case will proceed against Farris and Martino (and the Doe Defendants), with proceedings remaining stayed as to Corizon.

Dated: June 21, 2023     s/Kimberly G. Altman
Detroit, Michigan      KIMBERLY G. ALTMAN
           United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 21, 2023.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager